**CARPA, INC., et al., Plaintiffs-Appellees, Cross-Appellants.**

v.

**WARD FOODS, INC., et al., Defendants-Appellants, Cross-Appellees.**

No. 77–1245.

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1978.

**1318**

Charles L. Stephens, Fort Worth, Tex., George H. Kolb, Joe B. Harrison, Dallas, Tex., for Ward Foods et al.

Ralph G. Langley, William T. Armstrong, III, San Antonio, Tex., for Carpa, Inc., et al.

Before THORNBERRY, GOLDBERG and CLARK, Circuit Judges.

GOLDBERG, Circuit Judge:

After seven years of litigation in this private antitrust suit the original dispute between the parties has become a mere footnote,[1] and the adversaries and their attorneys now litigate over costs, attorneys' fees, interest on the judgment, and even interest on attorneys' fees. In Biblical times, such prolonged efforts in the fields were followed by a cessation of tillage and a year of rest. Litigants here seem to prefer the injunction of a different period,

> Lay on, Macduff
> And damn'd be 'him that first cries, "Hold, enough!"

Plaintiffs Carpa, Inc. (owned by plaintiff Payne) and Boone owned and operated Zuider Zee Restaurant franchises. They brought suit under the antitrust laws against defendant franchisor corporation Zuider Zee Oyster Bar, Inc. and its related corporations, against defendant Martin, who prior to 1968 was the chief stockholder of those corporations, and against defendant Ward Foods, ("Ward") which purchased Martin's shares in those corporations in 1968. Defendant Ward counterclaimed against plaintiff Boone for unpaid items purchased from Ward and its affiliates. The trial court entered judgment in the plaintiffs' favor on the antitrust action. Boone's share of the treble-damage award was $228,350.90, less $140,754.22 awarded to Ward on its counterclaim. In addition to the treble damage award, $202,380 was assessed against the defendants for plaintiffs' attorneys' fees. $76,904.40 of this attorneys' fee award was allocable to plaintiff Boone. The authorizing statute, 15 U.S.C. § 15, provides for attorneys' fees to successful antitrust plaintiffs. Here, because the plaintiffs had assigned their rights to attorneys' fees to their counsel, the court awarded this sum directly to the plaintiffs' attorneys. On an earlier appeal this court disallowed one item of the damage award amounting to $45,000 when trebled and affirmed the trial court's judgment "in all [other] things." *Carpa, Inc. v. Ward Foods, Inc.*, 536 F.2d 39 (5th Cir. 1976) (hereinafter

---

1. Plaintiffs, owners of franchised restaurants in Austin and San Antonio, brought suit against the franchisor and related individuals and corporations. Plaintiffs contended that defendants illegally combined to require the plaintiffs to purchase food, equipment, and supplies at excessive prices in order to obtain a franchise.

"*Carpa I* "). The case was remanded for entry of a final judgment. On remand, the district court (1) refused to offset against plaintiffs' award for attorneys' fees a state court judgment held by defendant Martin against plaintiff Boone, (2) allowed plaintiffs to recover six percent interest on attorneys' fees, and (3) allowed plaintiffs to recover all their requested costs of court. Defendants now appeal from these portions of the judgment. The district court in its order also (4) refused to allow plaintiffs nine percent post-judgment interest from the effective date of a Texas enactment increasing the state statutory interest rate from six percent to nine percent. Plaintiffs cross-appeal from this portion of the judgment.

We hold (1) that the district court correctly concluded that defendants were not entitled to offset their state court judgment against the attorneys' fee award, (2) that plaintiffs' counsel were not entitled to recover interest on the attorneys' fee award, (3) that the district court abused its discretion in taxing as costs sums spent for reproducing depositions without first making the necessary factual inquiries, but did not abuse its discretion in taxing as costs the plaintiffs' share of the special master's fee, and (4) that the district court's order denying a nine percent rate of interest on the plaintiffs' judgment should be reconsidered on remand in light of the Texas Supreme Court's resolution of the issue in two cases presently pending before it.

## I.

The first issue raised on appeal is whether the trial court erred in overruling defendants' motion to set off against plaintiff Boone's attorneys' fee award a state court judgment held by defendant Martin.[2] Prior to the original judgment of the district court, Boone assigned his entitlement to recover attorneys' fees to his counsel. After concluding that this assignment was valid, the district court awarded $76,904.40 in attorneys' fees directly to Boone's attorney. This assignment was challenged on appeal in *Carpa I*. We held that while the right to attorneys' fees is accorded the injured party and not his counsel, an antitrust plaintiff may assign counsel his right to those fees. 536 F.2d at 52.

■ Defendant Martin now contends that even though the assignment is valid, Martin has a right to setoff against his obligation to pay attorneys' fees his state court judgment against Boone. We disagree and hold that the decision of this Court in *Carpa I* upholding the assignment of attorneys' fees encompassed this issue by necessary implication and, as the law of the case, precludes consideration by the district court or by us of defendant Ward's setoff motion. We therefore affirm the district court's denial of defendants' motion.

Under well-settled principles of law, a decision of this court at an earlier stage of the same case represents the law of the case. *See Lehrman v. Gulf Oil Corp.*, 500 F.2d 659 (5th Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16 (5th Cir.), *cert. denied*, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974); *Hodgson v. Brookhaven General Hospital*, 470 F.2d 729 (5th Cir. 1972); *Prudential Insurance Co. v. Morrow*, 368 F.2d 813 (5th Cir. 1966) 1B J Moore's Federal Practice ¶ 0.404 et seq (2d ed. 1974). As such, the earlier decision generally precludes consideration of any legal question that has already been decided. In *White v. Murtha*, 377 F.2d 428 (5th Cir. 1967), we noted that

> [t]he "law of the case" rule is based on the salutary and sound public policy that litigation should come to an end. It is predicated on the premise that . . . it would be impossible for an appellate court to perform its duties satisfactorily

---

2. The state court judgment was apparently based on a loan made by the Austin National Bank to plaintiff Boone, payment of which was guaranteed by defendant Martin. When Boone defaulted on the loan, Martin paid off the bank's note, which was then assigned by the bank to Martin. Martin then sued Boone on the note and on September 17, 1973 received a state court judgment in his favor in the amount of $106,285.86 plus interest.

and efficiently and expeditiously if a question, once considered and decided by it were to be litigated anew in the same case upon any and every subsequent appeal thereof.

*Id.* at 431.

The reach of the law of the case doctrine is not limitless. The doctrine is not an inexorable command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise judicial practice. *Terrell v. Household Goods Carriers' Bureau, supra,* 494 F.2d at 19. Thus an intervening decision by the Supreme Court or the en banc Court of Appeals on a relevant issue may warrant a re-examination of the earlier decision. Generally, however, the doctrine is waived "only for the most cogent of reasons and to avoid manifest injustice." *Id.* at 19–20.

The doctrine is further limited insofar as it applies only to issues that were decided in the former proceeding and does not pertain questions that might have been decided but were not. Nevertheless "the doctrine does mean that the duty of a lower court to follow what has been decided at an earlier stage of the case comprehends things *decided by necessary implication* as well as those decided explicitly." *Id.* at 19 (emphasis supplied).

In applying these principles to the case at bar, we must examine the factual background underlying this court's decision on the assignment issue in *Carpa I.* At the time this court adjudicated that issue, the federal trial court and the state court had already rendered their decisions on damages. Boone's net recovery from defendants Martin and Ward in the federal action (the treble damage award not including attorneys' fees or other costs, less Ward's award on the federal counterclaim) was less than the amount of Martin's state court judgment. Thus unless Martin could either garnish the fee award to Boone's attorney or offset his own liability against the attorneys' fee award, he would be unable to recover all of his state court judgment against Boone from his own liability to Boone.[3] Apparently recognizing that a set off against the attorneys' fee award would be much more difficult to obtain if the assignment were upheld, *see* Brief for Appellees-Cross Appellants Ward-Martin at 64–65, *Carpa I, supra,* the defendants argued in *Carpa I* that the assignment was invalid. We rejected this argument, reasoning that the policies underlying the antitrust laws would be best served by validating assignments which assured counsel that they would receive their fees:

> While noting that the fee recovery was plaintiffs' personal right, the judgment below enforced an agreement, the existence of which was not disputed, assigning any awarded fees directly to counsel. Defendants vigorously contest this, for obvious reasons. After applying Boone's treble damage recovery to the accounts and other judgments owed defendants, Boone will still be in the red. Ward would much prefer to flesh out its recovery from the fund to which the attorneys must look for their fees. We know of no statute or public policy denying an antitrust plaintiff the privilege enjoyed by plaintiffs in other cases, that of making an assignment to his attorneys in order to secure their services in the prosecution of his case. *To deny counsel the fees awarded, and to do so at the instance of an antitrust defendant, would, we think, be inconsistent with the purpose of the statute in allowing, if not encouraging, private enforcement of the antitrust laws."*

*Carpa I, supra,* 536 F.2d at 52 (emphasis supplied). When making this statement, we were aware that Martin contemplated offsetting his liability to pay attorneys' fees

---

**3.** Boone's antitrust treble damage award totaled $228,350.90 (not including attorneys' fees). Subtracting the $140,754.22 award to Ward on its counterclaim, Boone's recovery was reduced to $87,596.68, $18,689.18 less than Martin's state court judgment of $106,285.86.

Thus if Martin is to recover all of his state court judgment from Boone's federal judgment against him, Martin must somehow attach the $76,904.40 award of attorneys' fees assigned by Boone to his counsel.

against his state court judgment.[4] Given this context, it is clear from the above quoted language that our holding in *Carpa I* validating the assignment was intended to ensure that Boone's counsel would not be denied the awarded fees because of defendant Martin's potential claim to those funds. One necessary implication of our holding in *Carpa I* thus must be to preclude a setoff in favor of Martin which would reduce or eliminate the payment of fees to Boone's counsel. Having already upheld the assignment which was designed to preclude the possibility of a setoff against the attorneys' fee award, and having expressly done so because the policies of the antitrust laws favor arrangements ensuring that plaintiffs' counsel receive their fee, we will not now allow a setoff which would deny plaintiffs' counsel a portion of the fee award. Since this is the law of the case, and since we find no indication that "manifest injustice" will result from applying that law here, *Terrell v. Household Goods Carriers' Bureau, supra*, 494 F.2d at 19, we hold that the district court properly denied the defendants' setoff motion.

## II.

■ The second issue raised by this appeal is whether the trial court properly provided for post-judgment interest on the plaintiffs' attorneys' fee award. The initial judgment of the trial court appealed from in *Carpa I* provided that defendants pay plaintiffs' counsel the sum of $202,380.00 for attorneys' fees. The reasonableness of this award was not challenged in the prior appeal, *Carpa I, supra*, 536 F.2d at 56. On remand the district court modified the at-

torneys' fee award to include interest at six percent per year, computed from September 5, 1974, the date of the original judgment.

We hold that the plaintiffs' attorneys are not entitled to interest on their fee award. The statutory award of attorneys' fees by the district court was made pursuant to 15 U.S.C. § 15, which provides in part that "Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws . . . shall recover threefold the damages by him sustained, and *the cost of suit, including a reasonable attorney's fee.*" (Emphasis supplied). The language of the statute clearly indicates that attorneys' fees are to be treated as part of the costs in an antitrust suit. The question thus becomes whether the district court may award interest on attorneys' fees when the fees are treated as costs.

■ We note at the outset that this question must be determined by federal law. Although the *rate* of interest is to be determined by state law, 28 U.S.C. § 1961, where as here the claim for relief is federally created, the *allowance* of interest is to be decided by federal law. *See Perkins v. Standard Oil Co.*, 487 F.2d 672 (9th Cir. 1973); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 384 F.Supp. 507 (S.D.N.Y. 1974), *reversed in part on other grounds*, 516 F.2d 172 (2nd Cir. 1975).

Under federal law, the award of attorneys' fees has been the exception not the rule, and a litigant generally assumes the burden of paying for his own litigation costs in the absence of a rule or statute to

---

**4.** In arguing against the assignment in their brief before this court in *Carpa I*, defendants stated:

> After the offsets Ward was entitled to based on its claims for accounts receivable and royalty against Boone and offsetting the amount of the Austin State Court judgment against Boone, Boone's net recovery [including the award of attorneys' fees] would have been less than the attorney's fees to be allocated to him under the [original] judgment
>
> . . . . .

Brief of Appellees-Cross Appellants Ward-Martin at 64, *Carpa I, supra*. Thus the defendants

recognized, and brought to this court's attention in the first appeal, the fact that plaintiff Boone's federal judgment (not including attorneys' fees) was less than the amount Boone owed the defendants on Ward's federal counterclaim and Martin's state court judgment, and that defendants therefore would have to look to the attorneys' fees award to satisfy fully their judgments against Boone. Knowing that Martin intended to offset his state court judgment against his attorney fee liability, this court in *Carpa I* nonetheless validated the assignment by Boone which we recognized was designed to prevent such an offset.

the contrary. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). "Thus, counsel fees ordinarily are not taxable as costs." 10 Wright and Miller, Federal Practice and Procedure § 2675 at 179–80. The antitrust laws do provide that a successful plaintiff may recover "the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15. This statutory authority for recovery of attorneys' fees does not, however, mention the award of interest.

The only authority we have discovered for awarding interest on attorneys' fees is the Ninth Circuit case of *Perkins v. Standard Oil*, 487 F.2d 672 (9th Cir. 1973). The precise issue in that private antitrust case was the date at which interest on attorneys' fees began to accrue, but in deciding that issue the court presumed that a successful plaintiff could receive interest on his attorneys' fee award and in fact upheld an award of interest on attorneys' fees. The court, however, based its result on its view that "there exists no real distinction between judgments for attorneys' fees and judgments for *other items of damages.*" 487 F.2d at 675 (emphasis supplied), and did not consider the statutory language classifying attorneys' fees as costs or analyze the question of whether interest may be awarded on attorneys' fees. We believe that the Ninth Circuit's treatment of attorneys' fees as an item of damages was based on an erroneous view of the law. The statute authorizing the recovery of attorneys' fees in antitrust cases provides that attorneys' fees are to be treated as part of "the cost of suit", 15 U.S.C. § 15, and this court has treated attorneys' fees as an item of costs rather than as part of the damage award. *See North Texas Producers Association v. Young*, 308 F.2d 235, 246 (5th Cir. 1962). *See also Baughman v. Cooper-Jarrett, Inc.*, 530 F.2d 529, 531 n.2 (3d Cir. 1976); 6 J. Moore, Federal Practice ¶ 54.71[2], at 1380 (2d ed. 1975).

Appellees do not contend that interest is payable on court costs as a general matter, and they fail to cite a single federal case in which interest was awarded on costs. Our own researches have also failed to uncover such a precedent. Against this background, it is significant that nothing in the statutory language or history of 15 U.S.C. § 15 indicates that Congress recognized a distinction between attorneys' fees and other costs.

The only Fifth Circuit case touching on this issue is *Duffer v. American Home Assurance Co.*, 512 F.2d 793 (5th Cir. 1975), which reaffirmed the traditional view that costs do not bear interest. *Duffer* was a diversity case which presented the question of whether, under Texas law, attorneys' fees are part of the judgment, which bears interest, or are an item of court costs, which do not bear interest. The controlling statute provided that "such attorney's fee shall be taxed as a part of the costs in the case," and in the absence of a controlling decision by the Texas Supreme Court and in light of the "unequivocal language of the statute," we held that the trial court erred in awarding interest on the attorneys' fee. 512 F.2d at 800. Although *Duffer* was a diversity case applying state law, it is somewhat instructive to note that faced with a statutory language similar to 15 U.S.C. § 15, and without any controlling precedent to bind it, the court held that attorneys' fees are an item of costs and as such do not bear interest.

In holding that attorneys' fees in antitrust cases may not bear interest, we are not unmindful that Congress manifested a strong remedial purpose in its decision to reverse the historical pattern and provide for the award of attorneys' fees to victorious plaintiffs in antitrust actions. However, Congress did not see fit to reverse the traditional practice of not awarding interest on court costs, if indeed it considered the question of interest or the policies underlying the historical practice. In the absence of further Congressional guidance, and in light of the fact that the provision of treble damages as well as attorneys' fees in the antitrust laws affords sufficient scope to the remedial purposes of encouraging private enforcement of the antitrust laws and

facilitating the procuring of legal services,[5] we see no basis for stretching the applicable statutory language to provide interest on the award of attorneys' fees to successful antitrust plaintiffs.

Congress could, of course, provide that attorneys' fees bear interest. Our holding that attorneys' fees in antitrust cases are not to bear interest implies nothing whatsoever about the propriety of interest on attorneys' fees authorized by other statutes. The language and history of a given statute might suggest that the public purposes underlying the statutory authority for attorneys' fees would be materially advanced by allowance of interest, and the absence of a treble damage provision which complements the attorneys' fee provision would also require consideration.

Finally, we reject plaintiffs' argument that to permit the losing party to retain the attorney fee award interest fee pending appeal encourages frivolous appeals. Rule 38 of the Federal Rules of Appellate Procedure already adequately deals with that problem by providing that if the court of appeals determines "that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

In summary, we reverse the trial court's determination that plaintiffs' attorneys were entitled to interest on their fee award.

### III.

The third issue raised on appeal is whether the trial court abused its discretion in taxing against the defendants as costs (1) sums expended by the plaintiffs for copying depositions and (2) fees paid by the plaintiffs to a special master who was appointed to determine both the amount owed defendant Ward on his counterclaim and the amount of damages sustained by plaintiffs on their claim.

■ We first considered the taxation of costs for copies of pretrial depositions. In *United States v. Kolesar*, 313 F.2d 835 (5th Cir. 1963), we held that the cost of obtaining copies of depositions may be taxed as costs if the copy was "necessarily obtained for use in the case" *Id.* at 838–39, *quoting* 28 U.S.C. § 1920.[6] This inquiry "inevitably calls for a factual evaluation:"

> The trial Judge must determine whether all or any part of a copy of any or all of the depositions was "necessarily obtained for use in the case." In that evaluation, great latitude and discretion must be accorded the Judge. Reversal will require an abuse of discretion.

313 F.2d at 840.

In the case at bar, nothing in the record indicates that the trial court ever made the necessary factual determination that there existed a reasonable need for the copies either in trial preparation or during the trial itself. The trial court did not hold an oral hearing as requested by the defendants, and his Order on Costs did not state that a reasonable need for the copies existed. Under the circumstances we reverse this portion of the award of costs and remand the case for the factual determination required by *Kolesar*.

The trial court also taxed the defendants as costs $3,000 which initially had been assessed against the plaintiffs as their share of the special master's fee. The master was appointed to determine the amount of damages on the plaintiffs' claim and defendant Ward's counterclaim. Defendants argue on appeal that because plaintiffs were not

---

**5.** We note in this regard that the treble damage provisions of the antitrust laws were designed in part to help finance litigation expenses in private antitrust suits. By creating the possibility of sizeable damage awards, Congress encouraged attorneys to try antitrust cases on a contingent fee basis.

**6.** The governing statute provides that

A judge or clerk of any court of the United States may tax as costs the following:

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case . . . . .

28 U.S.C. § 1920. In *Kolesar, supra*, we stated that depositions were included by implication in the phrase "stenographic transcript." 313 F.2d at 837–38.

completely successful before the special master and because plaintiffs agreed to stipulate the sums owed on defendants' counterclaim after the master had been appointed, the trial court abused its discretion in awarding as costs the plaintiffs' share of the special master's fee.

In taxing costs the trial court is accorded great latitude and discretion, and his determination may be reversed only upon a showing of abuse of that discretion, *LeLaurin v. Frost National Bank*, 391 F.2d 687 (5th Cir.), *cert. denied*, 393 U.S. 979, 89 S.Ct. 447, 21 L.Ed.2d 440 (1968); 10 Wright & A. Miller, Federal Practice and Procedure § 2668. With regard to master's fees, the Ninth Circuit has stated that:

> The compensation of a master is fixed by the court and paid as the court may direct. The prevailing party has a right to recover moneys paid for the master 'as a part of its recoverable costs   .  .  .  .'

9 C. Wright & A. Miller, Federal Practice and Procedure § 2608, at 798 (1971); accord, 6 J. Moore, Federal Practice ¶ 54.-77[3], at 1718 (2d ed. 1974).

*K–2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 476–77 (9th Cir. 1974).

■ The trial court in the instant case had full knowledge of the matters handled by the master and chose to award sums paid for master's fees to the prevailing party as part of its recoverable costs under Rule 54(d) of the Federal Rules of Civil Procedure.[7] We agree with the Ninth Circuit that moneys paid for a master are included in the recoverable costs under Rule 54(d). And unlike the requirement for taxing deposition reproduction costs, the trial court need not make any special factual determinations before taxing as costs moneys paid for a master's fee. The fact that the trial court appointed the master constitutes a sufficient showing that the master's services were necessary. It was thus within the scope of the trial court's discretion to award as costs to the prevailing party their share of the special master's fee. Finding no abuse of that discretion here, we affirm the award.

## IV.

The final issue before us is whether the trial court erred in denying plaintiffs' request for a nine percent rate of interest on their judgment beginning September 1, 1975, the effective date of the statutory interest rate increase.[8] Interest was allowed on plaintiffs' damage award at the rate of six percent per year on September 5, 1974. The federal statute authorizing interest provides that "such interest shall be calculated from the date of the entry of the judgment, *at the rate allowed by State law.*" 28 U.S.C.A. § 1961 (emphasis supplied). At the date of the judgment the legal rate of interest on judgments in Texas was six percent. On September 1, 1975 the legal rate of interest in Texas was increased to nine percent. Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 (Supp.1976). Plaintiffs now seek to recover nine percent interest on their judgment from September 1, 1975, the effective date of the statutory change.[9]

■ Section 1961 provides that the rate of interest on federal judgments shall be determined under state law. We believe that Congress, in mandating that state law shall control the rate of interest, also intended that state law would determine when changes in the state interest rate became effective. Thus state law should also control the question of whether a judgment entered before the date of the statutory interest increase may earn interest at

---

7. Rule 54(d) provides in relevant part that "Except when express provision therefor is made either in a statute of the United States or in these rules, *costs shall be allowed as of course* to the prevailing party unless the court otherwise directs."

8. Plaintiffs also were denied a nine percent interest rate on their attorneys' fee award. In light of our holding that no interest is to be awarded on attorneys' fees in this case, we need not consider whether an interest rate increase should have been granted.

9. We note that plaintiffs do not seek nine percent interest from September 5, 1974, the date of the original judgment, but rather from September 1, 1975, the date of the statutory change.

the new statutory rate from the effective date of the statute.

■ The Supreme Court of Texas has recently granted writs of error in two cases that present the precise issue before us in the case at bar. *Trinity Portland Cement v. Coastal Industrial Water Authority,* 551 S.W.2d 76 (Tex.Civ.App.1977), *writ of error granted,* No. B–6839, (Tex. S.Ct. Dec. 7, 1977); *Sammons Enterprises, Inc. v. Manley,* 554 S.W.2d 205 (Tex.Civ.App.1977), *writ of error granted,* No. B–6987 (Tex. S.Ct. Dec. 7, 1977). Rather than attempt to anticipate the decision of the Texas Supreme Court in these cases, we remand the question to the district court for reconsideration in light of the state court's final resolution of the issue in *Trinity Portland Cement* and *Sammons Enterprises.*

V.

In conclusion, we affirm the district court's holding that defendants were not entitled to offset their state court judgment against the attorneys' fee award and that the plaintiffs should recover as costs their share of the special master's fee. We reverse the lower court's decision to allow interest on attorneys' fees and to tax as costs fees spent for copying depositions.

We remand the deposition cost issue for further proceedings consistent with our opinion in *Kolesar.* We also remand the issue of the appropriate interest rate on the judgment for reconsideration in light of the forthcoming Texas Supreme Court pronouncements. Finally, we leave the determination of whether attorneys' fees should be awarded on this appeal and the amount of any such award to the district court on remand.

We are mindful that by remanding the issues of deposition copy costs and post-September 1, 1975 interest rates on the judgment, we risk the possibility of yet another appeal by one of the parties. We entertain the perhaps naive hope that on remand these matters will be finally resolved to the parties' acceptance, if not satisfaction, and that another appeal will not be necessary. Our wishfulness having been tempered by practical experience, however, we would not be shocked to again find this case on our docket a few years hence. We cannot escape the image of a ruefully smiling Charles Dickens, upon whose Bleak House this litigation appears to be modeled.

The judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED IN PART.