United States Court of Appeals,

Eleventh Circuit.

No. 95-4377.

Annette BANAI, Janos Banai, Petitioners,

v.

The SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, on Behalf of Steve Ellis TIMES, Betty Brinson and United States of America, Respondents.

Jan. 7, 1997.

Petition for Review of an Order of the United States Department of Housing and Urban Development. (HUDALJ 04-93-2060-8).

Before TJOFLAT, Circuit Judge, and RONEY and PHILLIPS[*], Senior Circuit Judges.

TJOFLAT, Circuit Judge:

This case comes before us on appeal from a Final Decision and Order of the Secretary of the Department of Housing and Urban Development ("HUD"), which affirmed the Initial Decision and Order of an administrative law judge ("ALJ"). After a hearing, the ALJ determined that the appellants, Janos and Annette Banai, violated section 804 of the Fair Housing Act (the "FHA"), 42 U.S.C. § 3604(a) and (c), by refusing to rent their house on account of the prospective lessees' race.[1] The Secretary thereafter issued an *in*

---

[*]Honorable J. Dickson Phillips, Jr., Senior U.S. Circuit Judge for the Fourth Circuit, sitting by designation.

[1]Section 804 of the FHA provides, in relevant part, that

> it shall be unlawful—
>
> (a) To refuse to sell or rent ... a dwelling to any person because of race, [or]
>
> (c) To make ... any statement ... with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race

*personam* order directing, *inter alia,* that the Banais pay $70,000 in compensatory damages to Steve Times and Betty Brinson, the victims of the Banais' discrimination. The Banais concede that they violated the FHA, but argue that the award of $70,000 is excessive. Because we find that the award is supported by substantial evidence on the record, we affirm.

I.

In August 1992, Times and Brinson, an unmarried black couple, lost their house in Princeton, Florida, to damage caused by Hurricane Andrew. They began searching almost immediately for a residence to rent, but the hurricane had created a critical shortage of residential property. Times and Brinson lived at Brinson's place of business for a short time, stayed with friends for a few days, and then moved into a hotel when they began receiving money from their insurance company for living expenses. While staying at the hotel, Brinson fell in the shower and was seriously injured; she was hospitalized as a result. Brinson's injuries impaired her mobility and required substantial physical therapy.

Shortly after Times and Brinson began looking for a home to rent, Annette and Janos Banai, a white couple residing in Lindhurst, New York, decided to place the house they owned in Hollywood, Florida, on the rental market. The Banais had learned that Hurricane Andrew had left many Miami-area residents without

---

... or an intention to make any such preference, limitation or discrimination.

42 U.S.C. § 3604 (1994).

homes and hoped that they could help victims of the hurricane by renting their house.  They contacted Manhattan Group Real Estate, Inc. ("Manhattan"), and arranged for that company to list their house for rent.  Sylvia Arias, then an employee of Manhattan, placed an advertisement for the house in a local newspaper.

While Brinson was still hospitalized, Times responded to this advertisement, and Arias showed him the Banais' house.  The house suited Times and Brinson given Brinson's injuries:  its one-story floor plan would allow Brinson to move around easily, and its proximity to her physical therapist was convenient.  Times told Arias that he and Brinson wanted to rent the house.  Arias believed that Times and Brinson were fully qualified to rent the house.  Thus, she told Times that she foresaw no problems with the rental, but needed to confirm it with the Banais.  The prospect of an end to their housing problems was a great relief to Times and Brinson.

Unfortunately for Times and Brinson, Arias' confirmation call to Annette Banai was not the mere formality she had expected.  Banai asked Arias about Times and Brinson's race;  when told that they were black, Banai responded that she could not rent to blacks because the neighbors would disapprove.  Upon learning of this conversation, Arias' supervisor at Manhattan called Banai and told her that Arias should not have responded to Banai's question about Times and Brinson's race, that a refusal to rent based on race was unlawful, and that if Banai did not change her mind, Manhattan would terminate the listing agreement.  Banai responded that she believed that she could rent to whomever she pleased and would not change her mind.  Manhattan terminated the agreement, and Arias

told Times the bad news and recommended that he obtain a lawyer.

Times continued to search for a house or an apartment to rent while Brinson remained hospitalized, but none suited them. Because the hotel did not accommodate Brinson's special needs resulting from her injuries, Times and Brinson were forced to move in with Times' mother and sister. This arrangement was also unsatisfactory because the apartment was too small for the four of them and because it was located far from Brinson's physical therapist. This environment placed stress on Times and Brinson's relationship and created tension between the couple and Times' family. Some time later, Times and Brinson received enough money from the insurance company to purchase a mobile home. This arrangement was also far from ideal as strong winds would shake the home during storms, and rats lived beneath it. Eventually, for reasons not related to the Banais' discrimination, Times and Brinson ended their relationship.

Times filed an administrative complaint against the Banais on behalf of himself and Brinson alleging housing discrimination in violation of the FHA.[2] After investigating the complaint and

---

[2]The FHA identifies people who believe that they have suffered from housing discrimination as "aggrieved persons," 42 U.S.C. § 3602(i), and provides several avenues of redress for them. *See* 42 U.S.C. §§ 3610, 3612, 3613, 3614. An aggrieved person may file an administrative complaint with the Secretary of HUD, as Times did here. *See* 42 U.S.C. § 3610(a)(1)(A)(i). In that case, the aggrieved person becomes the "complainant," and the alleged discriminator becomes the "respondent." *See* 42 U.S.C. § 3602(j), (n). The Secretary can also file a complaint on his own initiative. 42 U.S.C. § 3610(a)(1)(A)(i).

When a complaint is filed, the Secretary must engage in "conciliation" in an effort to resolve the dispute. 42 U.S.C. § 3610(b)(1). At the same time, the Secretary must investigate the complaint to determine whether "reasonable cause" exists to believe a violation of the FHA has occurred. 42 U.S.C. § 3610(g)(1). If reasonable cause is

not found, the Secretary must dismiss the complaint. 42 U.S.C. § 3610(g)(3). If reasonable cause is found, the Secretary must issue a charge setting forth the basis of the alleged violation. 42 U.S.C. § 3610(g)(2). At that point, the aggrieved person, the Secretary, or the respondent may elect to have the case heard in district court, in which case the Attorney General will file suit in district court on behalf of the aggrieved person. 42 U.S.C. § 3612(a).

If no election is made, the Secretary must prosecute his charge in a HUD administrative hearing. 42 U.S.C. § 3612(b). At this hearing, an ALJ receives evidence in accordance with the Federal Rules of Evidence, 42 U.S.C. § 3612(c), and thereafter makes findings of fact and conclusions of law. 42 U.S.C. § 3612(g)(3). If the ALJ concludes that a violation has occurred, he may order the respondent to pay the claimant his or her actual damages, may assess a civil penalty, and may provide such other equitable relief as may be appropriate. 42 U.S.C. § 3612(g)(3). The ALJ's decision is reviewable by the Secretary within 30 days, after which the decision becomes final and is appealable directly to the court of appeals for the circuit in which the FHA violation occurred. 42 U.S.C. § 3612(i).

This administrative remedy is not exclusive, however. An aggrieved person under the FHA need not file an administrative complaint with the Secretary. The FHA also authorizes an aggrieved person to file a civil action in district court. 42 U.S.C. § 3613(a)(1)(A). Even if an administrative complaint has been filed, an aggrieved person may file suit in district court until an ALJ has begun hearings on the matter. See 42 U.S.C. § 3613(a)(3). The district court, on a finding that a violation has occurred, may enter a judgment awarding the plaintiff actual and punitive damages, and may order such equitable relief as may be appropriate. 42 U.S.C. § 3613(c).

The FHA confers jurisdiction on the district court in two other situations. The first is when a party files an election to "opt out" of the administrative forum, forcing the Attorney General to file suit in district court to "prosecute" the alleged violation. 42 U.S.C. §§ 3612(a) & 3612(o)(3). In that case, the aggrieved party may intervene in the suit. 42 U.S.C. § 3612(o)(2). Upon finding a violation, the court can award actual and punitive damages, which accrue to the benefit of the aggrieved party unless that party has failed to intervene in the civil action or has failed to comply with the district court's discovery requests. 42 U.S.C. §§ 3612(o), 3613.

In addition, the Secretary may bypass the

finding probable cause to believe a violation had occurred, the Secretary of HUD issued a charge on behalf of Times and Brinson against the Banais.  Because none of the parties filed a demand to have the case heard in district court, the matter was referred to an ALJ.  *See* 42 U.S.C. § 3612(b).

The ALJ held an administrative hearing during which several witnesses gave testimony and other evidence was submitted.  In addition to the facts set forth above, the ALJ found that Times and Brinson were "devastated" and "angry" when they learned that the Banais had refused to rent to them because they were black.  It was the first overt discrimination that either had personally experienced.  Brinson could not believe that "in th[is] day and age ... because of my color I cannot rent this house.  Not because I am not qualified.  Because I am black."  The ALJ found that the pain caused by this discrimination continued at least through the time of the administrative hearing.  Times continued to worry that the experience would be repeated when he looked for housing in the future.

Following the conclusion of this hearing, the ALJ issued an

administrative forum and bring suit in district court when the case involves a "pattern or practice" of discrimination or affects a group of people and is of "general public importance," 42 U.S.C. § 3614(a), or when the case arises out of an agreement entered into as a result of the conciliation efforts described above.  42 U.S.C. § 3614(b).  On a finding of a violation of the FHA in that case, the district court may order appropriate equitable relief and may assess civil penalties.  42 U.S.C. § 3614(d).

In each of these cases, the district court can award reasonable attorneys' fees and costs to a prevailing party other than the United States.  42 U.S.C. §§ 3612(p), 3613(c)(2), 3614(d)(2).

Initial Decision and Order in which he concluded that the Banais had violated 42 U.S.C. § 3604(a) and (c). On the basis of this conclusion, the Secretary ordered the Banais to pay $35,000 to Times and $35,000 to Brinson as compensatory damages for their injuries.[3] The Banais concede that they violated the FHA; they argue only that the damages awarded here were excessive.

## II.

### A.

We have jurisdiction to hear this appeal pursuant 42 U.S.C. § 3612(i). We will reverse an ALJ's factual determinations, and thus the agency's final decision, only if they are unsupported by substantial evidence on the record. *Secretary, U.S. Dep't Hous. & Urban Dev. ex rel. Herron v. Blackwell,* 908 F.2d 864, 870 (11th Cir.1990).

### B.

Victims of discrimination in violation of the FHA are entitled to "actual damages."[4] Although the statute provides little guidance beyond this statement, anger, embarrassment, and

---

[3]Section 3612(g)(3) provides that upon finding a violation of the FHA, the ALJ "shall promptly issue an order for such relief as may be appropriate, which may include actual damages suffered by the aggrieved person and injunctive or other equitable relief." 42 U.S.C. § 3612(g)(3) (1994). In addition to ordering the Banais to compensate Times and Brinson in money damages, the ALJ ordered Manhattan and Arias to pay civil penalties. They have not appealed this decision.

[4]These "actual damages" are compensation for the victim's injuries, not punishment for the perpetrator's wrongdoing. The act provides separate punitive remedies. If the case is tried in district court, punitive damages are available. If, as here, the case is tried in an administrative hearing, punitive damages are unavailable, but the ALJ is authorized to assess a civil penalty. *See supra* note 2.

emotional distress are clearly compensable injuries under this standard.  *See Blackwell,* 908 F.2d at 872-73.  The ALJ found that Times and Brinson had suffered such injuries.  The question before us, therefore, is whether the record supports those findings.

III.

This is not a case of first impression in this circuit.  In *Blackwell,* we reviewed an ALJ's decision finding discrimination in violation of the FHA and awarding damages for injuries sustained as a result of the discrimination.  That case involved a claim that the defendant, Blackwell, refused to sell his house because of the prospective buyers' race.  Acting through an agent, Blackwell signed a contract of sale with Terryl and Janella Herron, a black couple.  When Blackwell learned that the Herrons were black, he found pretextual grounds to refuse to complete the sale.  The house was later leased to Brett and Audrey Cooper, a white couple.  The Coopers also pursued charges against Blackwell.  They contended that the publicity generated by the Herons' claim of racial discrimination caused them considerable distress and anxiety.

In that case, we held that the ALJ's award of $40,000 to the Herrons was "rational and fully supported by the record."  *Id.* at 872.  These damages served to compensate the Herrons for their "embarrassment, humiliation, and emotional distress."  *Id.* (internal quotations marks omitted).  In addition, we affirmed the ALJ's award of $20,000 to the Coopers for their "embarrassment, humiliation, and emotional distress" and for the "strain on "family unity' " that resulted from publicity surrounding the episode. *Id.* at 873.  We found that these injuries were compensable under the

Act and that the damages award was rationally supported by the record. *Id.*

In this case, the ALJ's award of damages is for injuries which closely parallel those in *Blackwell.* The ALJ found that Times and Brinson had suffered embarrassment and humiliation, the same injuries suffered by the Herrons and Coopers in *Blackwell.* In addition, a portion of the damages was compensation for the damage done to Times and Brinson's relationship. This damage closely parallels the injury to the Coopers' family unity in *Blackwell.*

The Banais contend, however, that the damages in *Blackwell* are justified only because of the particular facts of that case. They point out that the Herrons' injuries manifested themselves in physical symptoms and that the Coopers feared for their children's safety as a result of the public controversy surrounding their case. While those factors were considered by the ALJ and this court in affirming the damages in that case, the absence of those facts in this case does not dictate a reversal of the ALJ's award.

We note first that in *Blackwell* we *affirmed* the award of damages; nothing in that case suggested a level at which the damages awarded would have been excessive. The appellant cannot cite *Blackwell* as an indication of a ceiling above which a damages award would be considered excessive. In addition, our affirmance in *Blackwell* was not conditioned on the presence of physical symptoms or on the publicity surrounding the case. We listed these as factors that the ALJ considered in determining the size of the damages award. They suggest the seriousness of the injuries in that case; different facts suggest the seriousness of the injuries

in this case.

The ALJ based his award on his finding that Times and Brinson suffered "emotional distress for humiliation, embarrassment, anger, inconvenience, and lost housing opportunity," as well as damage to their relationship. The record supports the ALJ's decision even in the absence of physical symptoms or publicity. First, the hurricane had "devastated [Times and Brinson's] home, ... disrupted their lives, [and] render[ed] them uncomfortable and insecure." Given these facts, and the lack of adequate housing alternatives, the Banais' refusal to rent their house to Times and Brinson was particularly painful. In addition, the Banais' house offered exactly the amenities that Brinson's injuries required: it was a one story structure located close to her physical therapist. When the Banais turned Times and Brinson away, they were left with the alternatives of staying in a hotel that could not meet their needs or moving in with Times' family. Neither arrangement was adequate and their injuries were exacerbated as a result.

Finally, although Times and Brinson's ultimate decision to end their relationship was not a direct result of the Banais' discrimination, the ALJ found that the discrimination had injured the relationship and accordingly based a portion of the award on that injury. In short, while Times and Brinson did not suffer physical manifestations of their injuries and were not subjected to public scrutiny as a result of the Banais' discrimination, other equally valid factors support the ALJ's determination.

IV.

For the foregoing reasons, we find that the damages award in

this case is supported by substantial evidence on the record.

AFFIRMED.

. . . . .