**P.R. HALL, Plaintiff,**

v.

**LOWDER REALTY CO., INC., et al., Defendants.**

**No. CIV.A. 97–T–1382–N.**

United States District Court, M.D. Alabama, Northern Division.

June 3, 2003.

Elaine R. Jones, Norman J. Chachkin, NAACP Legal Defense Fund, New York, NY, Leslie Proll, NAACP Legal Defense & Education Fund, Inc., Washington, DC, Joe R. Whatley, Jr., Whatley Drake, L.L.C., Birmingham, AL, Charles H. Volz, III, Volz & Williams PC, Montgomery, AL, for P.R. Hall, plaintiff.

Frances Heidt, Fern Singer, Marion F. Walker, Berkowitz Lefkovits Isom & Kushner, Gail Crummie Washington, Birmingham, AL, for Lowder Realty Co., Inc., Lowder New Homes, Inc., Lowder New Homes Sales, Inc., The Colonial Company, James K. Lowder, Jerry Wills, Fraser United States of America ex rel. Ronald L. Sparkman, John Dorough, Jr., Barbara Bonds, Warren Stafford, defendants.

Colonial Bank, c/o Registered Agent, William A. McCrary, Montgomery, AL, pro se.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff P.R. Hall, an African–American real-estate agent, brought this lawsuit asserting that her former employer engaged in racially discriminatory-referral prac-

tices; terminated her employment for opposing discrimination and because of her race; and threatened to terminate her real-estate license for opposing discrimination and because of her race. She named as defendants Lowder Realty Company, Inc., Lowder New Homes, Inc., Lowder New Homes Sales, Inc., Colonial Company, Coldwell Banker Residential Associates, Inc., Coldwell Banker Real Estate Corporation, James K. Lowder, Jerry Wills, Fraser Sparkman, John Dorough, Jr., Barbara Bonds, and Warren Stafford. Hall brought her claims under the Fair Housing Act of 1968 (42 U.S.C.A. §§ 3601 through 3631 (specifically § 3604, subsections (a) through (c), §§ 3605, 3606, and 3617)) (hereinafter referred to as the "FHA") and the Civil Rights Act of 1866 (42 U.S.C.A. § 1981) (hereinafter referred to as "§ 1981"), seeking declaratory and injunctive relief and compensatory and punitive damages. This cause is now before the court on Hall's motions for attorneys' fees and expenses pursuant to 42 U.S.C.A. §§ 1988 and 3613(c)(2); she seeks to recover $ 322,533.78 in fees and expenses from Lowder Realty, the only defendant against which she recovered on the merits.

## I.

In federal civil-rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988(b); *see also* 42 U.S.C.A. § 3613(c)(2) (allowing court to award attorneys' fee in civil action alleging discriminatory housing practice); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532

U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (statutory fee-shifting provisions from different statutes have been interpreted consistently). The $ 322,533.78 which Hall seeks in fees and expenses can be broken down as follows:

| ATTORNEYS | HOURS | RATES | SUBTOTALS |
|---|---|---|---|
| WHATLEY DRAKE, L.L.C. | | | |
| Joe Whatley | 83.0 | $ 400 | $ 33,200.00 |
| Richard Frankowski | 0.4 | 200 | 80.00 |
| Clerk support | 4.3 | 75 | 322.50 |
| Paralegal support | 0.3 | 105 | 31.50 |
| NCAAP LEGAL DEFENSE FUND | | | |
| Leslie Proll | 743.4 | 300 | 223,020.00 |
| Reed Colfax | 96.7 | 200 | 19,340.00 |
| Paralegal support (Addisu Demissie) | 138.4 | 105 | 14,532.00 |
| SUBTOTAL | | | $ 290.526.00 |
| Expenses | | | 32,007.78 |
| TOTAL | | | $ 322,533.78[1] |

 Whether Hall is entitled to recover all or part of her fee-and-expense request turns on whether she is a "prevailing party" within the meaning of § 1988 and § 3613(c)(2). In *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted), the Supreme Court held that, under § 1988, a plaintiff may be considered a prevailing party if the plaintiff succeeds on "any significant issue in the litigation

---

1. In Hall's brief in support of her petition for attorneys' fees and expenses, filed June 14, 2002 (Doc. no. 231), she states that she is requesting $ 323,887.78 in fees and expenses. This discrepancy is due to a miscalculation on Hall's part. Hall failed to separate the 88 hours claimed for Attorney Whatley into 83 hours for Attorney Whatley, 0.4 hours for Attorney Frankowski, 0.3 hours for paralegal support, and 4.3 hours for clerk support, as Attorney Whatley did in the attachments to his affidavit. When those 88 hours are divided properly, Hall is seeking $ 322,533.78 in fees and expenses.

which achieves some of the benefit the part[y] sought in bringing suit." As the Supreme Court explained in *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 790–91, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989), awards of attorneys' fees and expenses are not dependent on the plaintiff succeeding on "all" of her claims or even on achieving success on the "central" issue in the litigation. All the significant-relief standard requires is that the plaintiff receive at least some relief on the merits of her claim. Once this requirement is met, the plaintiff has, in general, crossed the threshold to a fee-and-expense award of some kind. *See id.* at 792, 109 S.Ct. at 1493.

■ Hall was the prevailing party under § 1988 and § 3613(c)(2) when the jury awarded her $ 72,000 in compensatory damages and $ 28,000 in punitive damages on her discriminatory-referral claim against Lowder Realty. As such, she is entitled to be reimbursed for reasonable fees and expenses. The critical question, however, is whether Hall is entitled to the entire $ 322,533.78 she seeks in fees and expenses.

## II.

■ The starting point in setting any fee award for an attorney is determining the "lodestar" figure—that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1303. This burden includes supplying the court with specific and de-

tailed evidence from which it can determine the reasonable hourly rate, maintaining records to show the time spent on the different claims, and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999). "A well-prepared fee petition also would include a summary, grouping time entries by the nature of the activity or state of the case." *Id.* (citation omitted).

■ A fee applicant should also exercise "billing judgment," *id.* at 428 (quoting *Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939–40), that is, the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.'" *Id.* (citation omitted). "Those opposing fee applications have obligations, too. In order for [district] courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Id.* (citation omitted).

■ After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

■ In making the above determinations, the court is guided by the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).[2] *See also Blanchard v.*

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the

*Bergeron,* 489 U.S. 87, 91–92, 109 S.Ct. 939, 943–44, 103 L.Ed.2d 67 (1989). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

## A. Reasonable Hours

█ Hall's attorneys seek compensation for 1,066.5 hours, including the time spent by paralegals and clerks and time spent preparing the fee-and-expense petition. *Johnson v. Mississippi,* 606 F.2d 635, 638 (5th Cir.1979) (compensation for time expended in the pursuit of attorneys' fees is proper). The court considers three *Johnson* factors—the time and labor required, the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed by Hall's counsel. Or, to put it more succinctly, the court must balance the amount of effort against Hall's overall success.

While Hall brought this lawsuit under multiple FHA code sections and § 1981 and against 12 defendants, she essentially raised three claims: that her former employer (1) engaged in racially discriminatory-referral practices; (2) terminated her employment for opposing discrimination and because of her race; and (3) threatened to terminate her real-estate license

for opposing discrimination and because of her race.

*The Amount Involved and the Result Obtained:* Looking at Hall's claims in this fashion, it is clear that Hall prevailed on only one claim and against only one defendant: her discriminatory-referral claim against Lowder Realty. First, prior to trial, Hall stipulated to a dismissal of all claims against Coldwell Banker Residential Associates, Inc. and Coldwell Banker Real Estate Corporation. Second, the court granted summary judgment for the defendants on all but Hall's racially-discriminatory-referral-practices claim and her retaliatory-termination-for-opposing-discrimination claim. *Hall v. Lowder Realty Co.,* 160 F.Supp.2d 1299, 1307 (M.D.Ala.2001). The court also granted summary judgment in favor all the remaining defendants except Lowder Realty, Lowder New Homes, Inc., Colonial Company, James K. Lowder, Jerry Wills, Fraser Sparkman, and John Dorough, Jr. *Id.* Third and finally, the jury found in favor of Hall on only her discriminatory-referral claim and against only Lowder Realty, with an award of $ 72,000 in compensatory damages and $ 28,000 in punitive damages, for a total award of $ 100,000.

The court recognizes that Hall's $ 100,000 damage award is less than the $ 322,533.78 in attorneys' fees and expenses she seeks to recover. "However, while the amount of damages a plaintiff recovers is certainly relevant, attorney fees need not be limited to a portion of the damages recovered." *Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 744 F.Supp. 1061, 1071 (M.D.Ala.1988) (Thompson, J.) (citing *Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)) *aff'd,* 891 F.2d 842 (11th Cir.1990). "[S]uccess in a civil rights case 'cannot be valued

Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

solely in monetary terms.' ... [W]hen determining the degree of success obtained by a civil rights plaintiff, a court must be careful not to place 'undue emphasis on the modest money damages that were found by the jury' because successful civil rights actions vindicate a public interest." *Villano v. Boynton Beach,* 254 F.3d 1302, 1305–06 (11th Cir.2001) (quoting *Riverside,* 477 U.S. at 574, 106 S.Ct. at 2694; *Williams v. Thomas,* 692 F.2d 1032, 1038 (5th Cir.1982)).

Nevertheless, this court is also guided by the principles articulated in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In *Farrar,* the plaintiffs sought $ 17 million in compensatory damages at trial against multiple defendants for violations of constitutional rights but recovered only nominal damages against one defendant. The trial court awarded the plaintiffs $ 280,000 in fees plus expenses and interest under 42 U.S.C.A. § 1988. The Supreme Court addressed the reasonableness of the fee award in light of the relief obtained by the plaintiffs and held that the plaintiffs could not recover attorneys' fees. *Id.*

In so deciding, Justice Thomas, in an opinion joined by three justices and concurred with by Justice O'Connor, reiterated *Hensley*'s holding that "the degree of the plaintiff's overall success goes to the reasonableness of a fee award" and that " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Id.* at 114, 113 S.Ct. at 574. Where a plaintiff's purpose is the recovery of damages, Justice Thomas admonished, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* at 114, 113 S.Ct. at 575. And where the amount and nature of damages awarded are small in comparison to what the plaintiffs sought, "the court may lawfully award low fees or no fees." *Id.* at 115, 113 S.Ct. at 575. Justice Thomas concluded that, because the plaintiffs had sought compensatory damages but, due to their failure to prove an essential element of their claim, obtained only nominal damages, they were entitled to no fees at all. *Id.* Justice O'Connor, concurring with Justice Thomas in the judgment, explained that, in her view, the plaintiffs were not entitled to fees because theirs was a purely technical or Pyrrhic victory. *Id.* at 117, 113 S.Ct. at 576.

While the plaintiffs in *Farrar* obtained only a one-dollar nominal-damages award against one defendant, Hall has obtained a judgment in the amount of $ 100,000 in satisfaction of her discriminatory-referral claim. Clearly, then, Hall has obtained a significantly greater degree of success than did the plaintiffs in *Farrar.* The court accordingly finds that an award of no fees or extremely low fees, as permitted under certain circumstances by *Farrar,* is not warranted in this case.

Nevertheless, the court must assess Hall's level of success. In her concurrence, Justice O'Connor suggested three factors that courts should consider in making the assessment: (1) the difference between the amount recovered and the relief sought; (2) "the significance of the legal issue on which the plaintiff claims to have prevailed"; and (3) whether the litigation accomplished a "public goal." *Id.* at 121–22, 113 S. Ct. at 578–79.

The court first will compare the relief sought with Hall's recovery. Here, Hall sought compensatory damages, punitive damages, a declaratory judgment, and an injunction. She asserted three or so claims against 12 defendants. As noted earlier, Hall obtained only $ 100,000 in damages on her discriminatory-referral claim from only one defendant. However, that she prevailed against only one defen-

dant out of 12 is misleading. The reason she sued (and indeed, had to sue) so many defendants is because of the extremely complex corporate and personal interrelationship among the defendants; while these defendants were separate entities, they were interrelated. Throughout the pretrial and trial proceedings, it was quite difficult to discern which defendant was responsible for what and accountable to what or whom in the various real-estate transactions; the effort to pin down which was the proper defendant was often a shell game. In short, Hall needed to succeed against only one defendant (which she did), or perhaps two, for complete success on a claim. She was not trying to hold all the defendants accountable; she was instead trying to figure out, from the defendants' complex interrelationship, which one should be held accountable if she prevailed. Nevertheless, based on comparison of the monetary and injunctive relief

Hall sought and that which she ultimately obtained, the court still concludes that Hall's success was partial.

The second factor suggested by Justice O'Connor does, however, indicate that Hall's level of success, while partial, was still greatly significant. As noted above, Justice O'Connor suggests that the court consider the significance of the legal issue upon which the plaintiff prevailed. This consideration aids assessment of a plaintiff's success where the plaintiff has lost some claims but won others. In this case, the FHA and § 1981 prohibit the making of assignments in the real-estate business based on race.[3] These statutes prohibit limiting agents to doing business in certain geographical areas on the basis of race. Such assignments are often based on a racial stereotype that persons of one race work better with customers of the same race and on the premise that a person's race is directly related to her ability to do

---

**3.** Section 3606 of the FHA prohibits "deny[ing] any person access to or membership or participation in any multiple-listing service, real estate brokers' organization or other service, organization, or facility relating to the business of selling ... dwellings, or to discriminate against him in the terms or conditions of such access, membership, or participation, on account of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C.A. § 3606. The Department of Housing and Urban Development (HUD) regulations interpreting § 3606 list among actions prohibited by the provision: "Denying or limiting benefits accruing to members in a real estate brokers' organization because of race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.90(b)(2).

Subsection (a) of § 3605 of the FHA provides that, "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C.A. § 3605(a). The statute defines

the term "residential real estate-related transaction" to include "[t]he selling, brokering, or appraising of residential real property." 42 U.S.C.A. § 3605(b)(2). The HUD regulations interpreting this section prohibit discrimination "in the performance of" real-estate sales and brokering services. 24 C.F.R. § 100.135(a).

Section 3604(b) of the FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C.A. § 3604(b). "[S]ection 3604(b) protects the right to buy or rent without racial distinctions." *Grant v. Smith*, 574 F.2d 252, 255 (5th Cir.1978).

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts." *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir.1999). In *Ferrill*, an employment-discrimination case, the Eleventh Circuit made clear that racial pairing of employees and customers, even in the absence of racial animus, violates § 1981.

her job. Accordingly, these practices are rightly illegal under the FHA and § 1981.

Hall claimed, and the jury apparently agreed (as does the court from its assessment of the evidence), that Lowder Realty matched her with certain customers on the basis of her race and the race of her customers and that she was assigned homes to sell based on the racial composition of the areas in which those homes were located. With this policy and practice, Lowder Realty was engaging in nothing short of the severely condemned practice of racial segregation. Hall, therefore, vindicated not only her right and even the right of her customers to be free from racial segregation, but the right of all residents of Montgomery, Alabama to have this evil practice purged from their midst. With her litigation, she showed that, into the late twentieth century, racial segregation (albeit now enforced socially and, unlike in the past, without the force of government-sponsored legislation) still existed in this city and, that, without efforts such as hers, it would continue to exist into the twenty-first. What Hall achieved was far from just a small, or even a modest, victory for this community.

The court must also consider whether the litigation advanced a 'public goal.' As stated, not only did Hall vindicate one of her own civil rights, her suit vindicated the public's interest in ridding the vestiges of racial segregation from all aspects of our society, including housing. *Villano*, 254 F.3d at 1306 ("In this circuit, we have previously explained that a court that reduced a § 1988 award 'would have erred had it ignored the fact that the plaintiff in a civil rights action benefitted the public interest by vindicating her constitutional rights." (citation omitted)). For those who were born during the second half of the twentieth century and thus may not be fully and personally familiar with the debilitation and humiliating effects of racial

segregation (particularly, in housing) on an all-American (albeit black) family, they need only catch a showing of Lorraine Hansberry's play, "A Raisin in the Sun," and preferably the movie of the play staring Sidney Poitier, to begin to appreciate the perniciousness of those effects. Therefore, while Hall's success was partial, this factor strongly suggests that her fee award should not be limited by just that.

*The Novelty and Difficulty of the Case:* Hall's successful discriminatory-referral claim was both novel and difficult. As the court explained in its summary-judgment opinion, when evaluating this claim, "there is very little case law interpreting [42 U.S.C.A.] § 3606 at all," *Hall*, 160 F.Supp.2d at 1316 n. 71, and Hall asserts without contradiction that there have been few if any discrimination claims filed on behalf of real-estate agents under §§ 3605 and 3606; Hall also argues that there have been no awards for FHA claims within the Eleventh Circuit that match her $ 100,000 award. While these arguments are difficult to verify, especially if the parties do not appeal, the court cannot find any published cases that contradict these arguments. *Cf. Banai v. Secretary, U.S. HUD*, 102 F.3d 1203 (11th Cir.1997) (upholding award of $ 70,000 to two plaintiffs for FHA violations); *Secretary, U.S. HUD ex rel. Herron v. Blackwell*, 908 F.2d 864 (11th Cir.1990) (upholding awards of $ 44,000 and $ 20,000 to two couples).

■ Based on the above, the court will reduce Hall's requested hours by a certain percentage. *See, e.g., Black v. M.G.A., Inc.*, 51 F.Supp.2d 1315, 1322–24 (M.D.Ala. 1999) (Thompson, J.) (reducing plaintiff's recovery due to limited success). While Hall's petition for attorneys' fees makes it impossible for the court to "identify specific hours spent in unsuccessful claims," *Norman*, 836 F.2d at 1302, such is not required. *Eckerhart*, 461 U.S. at 436–37,

103 S.Ct. at 1941 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success."); *Dillard v. Greensboro,* 213 F.3d 1347, 1356 n. 9 (11th Cir.2000) (To account for limited success, "[i]n the end, ..., the result is the same whether you adjust the fee itself or the number of hours spent ...."). Instead the court need only make its best attempt to balance her overall success against the amount of effort put forth, while taking into consideration the difference between the amount recovered and the damages sought, the significance of the legal issue on which Hall prevailed and whether the litigation accomplished a "public goal." *See Black,* 51 F.Supp.2d at 1322–23 (citing *Farrar v. Hobby,* 506 U.S. 103, 121–22, 113 S.Ct. 566, 578–79, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring)); *see also Norman,* 836 F.2d at 1302 (stating that, in measuring success, the court should do more than make a "reduction based on a simple ratio of successful issues to issues raised.").

Although Hall achieved substantial success on only one of her claims, the court finds that claim to have been a novel and difficult claim that vindicated an important constitutional right; indeed, as stated, not only did Hall vindicate her own constitutional right, but her suit vindicated the public's interest in purging the Montgomery community of continued racially imposed segregated housing. For these reasons, the court will reduce Hall's requested hours, but only by 40%, subject to any specific reductions below.

*The Time and Labor Required:* Lowder Realty takes issue with specific hours for which Hall's attorneys request reimbursement. To the extent that these hours are noncompensable, the court will first sub-tract them from the total requested before reducing the entire request by 40%.

■ (1) *Leslie Proll:* Lowder Realty argues that Attorney Proll should not be reimbursed for the time she spent traveling between Washington, D.C. and Birmingham, Alabama. When Attorney Proll accepted Hall as a client, she lived in Birmingham; within a year, she moved to Washington, D.C., but continued to represent Hall. Lowder Realty objects to Attorney Proll's 92.8 hours in travel time, claiming that Hall could have secured local counsel. *See, e.g., Dillard v. City of Foley,* 995 F.Supp. 1358, 1370 (M.D.Ala.1998) (Thompson, J.) (reducing travel-time compensation because local counsel could have been retained). Hall, on the other hand, points out that Attorney Proll was local counsel, and only moved to Washington, D.C., when she took a full-time job with the NAACP Legal Defense and Educational Fund. She also argues that Attorney Proll was extremely experienced in fair housing law, and that the only travel time for which she seeks compensation was to attend depositions, summary-judgment arguments, pretrial conferences and trial.

The court must agree with Hall that Attorney Proll should not be penalized for making a professional move to another city, and finds that Attorney Proll is "an exceptionally qualified attorney on the types of issues raised by this litigation, and it is not unreasonable that [Hall] should have enlisted [her] aid." *Id.; see also Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham,* 706 F.2d 1205, 1207 (11th Cir.1983) (noting that civil-rights litigants need not select the nearest and cheapest attorney). As such, the court will not reduce Attorney Proll's hours based on her reasonable time spent traveling to and from Alabama.

Lowder Realty also argues that Attorney Proll's hours should be reduced be-

cause Hall eventually prevailed on so few claims. Specifically, Lowder Realty objects to the 95.6 hours Attorney Proll spent on summary judgment, arguing that some of Hall's claims failed to survive summary judgment, and, of those that did survive, only a few were covered by the verdict. Lowder Realty also objects to the 82.6 hours Attorney Proll spent preparing the complaint, doing discovery, and taking depositions; the 49.6 hours she spent in preparation in 1999 for a trial that was continued; the 185.8 hours she spent in trial preparation for the 2002 trial; and the 75.3 hours she spent in trial. Lowder Realty's basis for all of these reductions is essentially the same; because Hall prevailed on only one claim, her attorneys' hours should be cut substantially.

The logic behind these reductions, however, is the same that caused the court to reduce Hall's request by 40%. Lowder Realty has provided no reason to cut specific hours from Attorney Proll's request, instead arguing that the request should be reduced because Hall did not prevail on her retaliation claim. For that reason, the court finds no reason to cut specific hours out of Attorney Proll's request, and, instead, simply will reduce her requested hours by 40%. Attorney Proll will therefore be compensated for $743.4 \times 60\% = 446.04$ hours.

■ (2) *Joe Whatley:* Lowder Realty argues that Attorney Whatley's hours should be cut because he only cross-examined the individual defendants with regard to the structure of the corporate defendants and the individual defendants' responsibilities therein, issues that were tied to Hall's retaliation claim. Hall, on the other hand, points out that Attorney Whatley participated extensively in the preparation of the case for trial, and that he conducted voir dire, handled the jury selection, and made the final closing argument. Because Lowder Realty has provid-

ed no evidence that Attorney Whatley did not actually work the hours that he claimed, and because Attorney Whatley was involved in the entire trial process—from voir dire to closing argument—the court refuses to make any specific reductions to his claimed hours. Again, however, Attorney Whatley's claimed hours will be reduced by 40%, to $83 \times 60\% = 49.8$ hours.

■ (3) *Reed Colfax:* Lowder Realty objects to Attorney Colfax's hours on the same basis that it objected to Attorney Proll's hours, that many of Attorney Colfax's hours were spent on claims that did not prevail. For the same reasons as above, the court will not make any specific reductions of Attorney Colfax's requested hours on this basis. Lowder Realty also argues that the 3.5 hours Attorney Colfax spent to draft a motion for a protective order were too many, and that it should not have taken him .5 hours to prepare a notice to withdraw as counsel. The court finds Attorney Colfax's hours spent on these matters to be well within reason, and declines to reduce them. Thus, Attorney Colfax will be compensated for $96.7 \times 60\% = 58.02$ hours.

■ (4) *Paralegal support:* Lowder Realty objects to those hours spent by paralegal support—specifically, by Addisu Demissie—arguing that they were not hours "traditionally done by an attorney." *Black v. M.G.A., Inc.,* 51 F.Supp.2d 1315, 1324 (M.D.Ala.1999) (Thompson, J.) (citation omitted). As the Supreme Court has found, paralegal work is compensable when it involves, "for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins,* 491 U.S.

274, 288 n. 10, 109 S.Ct. 2463, 2472 n. 10, 105 L.Ed.2d 229 (1989). On the other hand, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them. ... 'It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work ...'" *Id.* (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974)).

 Having reviewed Paralegal Demissie's claimed hours, the court finds certain of his hours to be noncompensable as clerical in nature. First, those hours spent preparing to "review documents; [and] help to prepare chart exhibits" are not fully compensable, even if Paralegal Demissie was compiling data for the documents, as Hall asserts. The court will therefore reduce those hours from 30.4 to 10. Second, those hours spent preparing to travel and traveling between Washington, D.C., and Montgomery, Alabama, must be reduced substantially, as Paralegal Demissie obviously drove to and from Alabama, time "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel." *ACLU v. Barnes,* 168 F.3d 423, 428 (11th Cir.1999) (citation omitted). The court will therefore reduce those hours from 41.4 to 10, a reasonable amount of time to have spent traveling between Washington, D.C., and Montgomery. Finally, the court finds certain of Paralegal Demissie's miscellaneous hours to have been spent doing clerical work, specifically the 2.2 hours reviewing and completing trial binders and the 2.3 hours spent unloading and organizing trial documents. Paralegal Demissie will receive no compensation for those hours. In all, the court will reduce Paralegal Demissie's hours from 138.4 to 82.1. Those remaining hours will then be reduced by 40% due to Hall's limited success; Paralegal Demissie will therefore be compensated for 82.1 × 60% = 49.26 hours.

(5) *Other:* Lowder Realty raises no objection to the hours claimed by Attorney Frankowski, or the hours claimed for clerk support and paralegal support by the Whatley Drake firm, other than the general objection that Hall's claimed hours should be cut because she did not prevail on all claims. As such, the court will award those hours in full, subject to the 40% reduction based on Hall's limited success. Frankowski will therefore be compensated for 0.4 × 60% = 0.24 hours; clerk support at Whatley Drake will be compensated for 4.3 × 60% = 2.58 hours; and paralegal support at Whatley Drake will be compensated for 0.3 × 60% = 0.18 hours.

In sum, Hall's attorneys will be compensated for the following number of hours, a number that is less than what Hall sought because of her lack of success on the retaliation claim:

| ATTORNEYS | HOURS |
| --- | --- |
| WHATLEY DRAKE, L.L.C. | |
| Whatley | 49.80 |
| Frankowski | 0.24 |
| Clerk support | 2.58 |
| Paralegal support | 0.18 |
| | |
| NCAAP LEGAL DEFENSE FUND | |
| Proll | 446.04 |
| Colfax | 58.02 |
| Paralegal support (Demissie) | 49.26 |

### B. Prevailing Market Rates

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. To determine the prevailing market rate, the court will consider the

following *Johnson* factors: customary fee; skills required to perform the legal services properly; the experience, reputation, and ability of the attorneys; time limitations; preclusion of other employment; undesirability of the case; nature and length of the professional relationship with the clients; fixed or contingent fee arrangement; and awards in similar cases. Hall's attorneys seek the following hourly rates:

| ATTORNEYS | RATES |
| --- | --- |
| **WHATLEY DRAKE, L.L.C.** | |
| Whatley | $ 400 |
| Frankowski | 200 |
| Clerk support | 75 |
| Paralegal support | 105 |
| **NCAAP LEGAL DEFENSE FUND** | |
| Proll | 300 |
| Colfax | 200 |
| Paralegal support (Demissie) | 105 |

■ *Customary Fee:* The customary fee can be analyzed both in terms of what these attorneys usually charge and in terms of the customary fee charged for this type of work in the community.

"What [the attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.' On the other hand, a court should hesitate to give controlling weight to prior awards, even though they may be relevant. The reason is obvious: Prior awards are not direct evidence of market behavior; the court is not a legal souk. Of course there is some inferential evidentiary value to the prior award, because in theory the prior court based the award on the market rate. But giving prior awards controlling weight over the superior evidence of a lawyer's actual billing rate equates to giving the prior awards issue-preclusive value against a party whose interests were not even arguably represented in the prior litigation."

*Dillard v. Greensboro,* 213 F.3d 1347, 1354–55 (11th Cir.2000) (citations omitted). In this case, Attorney Whatley has provided a sworn affidavit stating that he has billed his time at $ 450 per hour since January 1, 2001, and that he was awarded that amount by the court in *In re Lorazepam and Clorazepate Antitrust Litigation,* 205 F.R.D. 369 (D.D.Cir.2002). In his affidavit, Attorney Whatley also states that his firm routinely bills Attorney Frankowski's time at $ 200 per hour. Attorney Proll's sworn affidavit states that she has been awarded $ 140 and $ 185 per hour, *see Knight v. Alabama,* 824 F.Supp. 1022, 1033 (N.D.Ala.1993), *Byrd v. First Real Estate Corp.,* CV–95–N–3087–S (N.D.Ala.), that she has settled a number of cases for fees ranging from $ 225 to $ 250 per hour, and that she charged $ 300 per our for fair housing legal training conducted in Montgomery, Alabama. Neither Attorney Colfax nor Paralegal Demissie provides the court with any information about what they usually charge or prior awards that they have received.

"The customary fee for similar work in the community should be considered." *Johnson,* 488 F.2d at 718. The relevant legal community is Montgomery, Alabama. *Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994) ("The rate of attorney's fees is that of the place where the case is filed.") This court has found that the customary fees for attorneys in civil rights cases in Alabama range "from approximately $ 125 to approximately $ 350 per hour in certain cases." *City of Foley,* 995 F.Supp. at 1373. More importantly, this court has found that "the customary fees for attorneys working on employment discrimination cases in the Montgomery area ranges from $ 130 to $ 300 [per hour]," *Ramsey v. Alabama Pub. Serv. Comm'n,* 2000 WL 426187, *6

(M.D.Ala.2000) (Thompson, J.). The court has found paralegal work to be compensable at between $ 50 and $ 70 per hour. *See Wyatt By and Through Rawlins v. Sawyer*, 67 F.Supp.2d 1331, 1358 (M.D.Ala.1999) (Thompson, J.) (finding $ 60 to $ 85 per hour for paralegals and legal associates to be reasonable); *Reynolds v. Alabama Dep't of Transp.*, 926 F.Supp. 1448, 1459 (M.D.Ala.1995) (Thompson, J.) (awarding $ 65 per hour to paralegals); *Coleman v. Cannon Oil Co.*, 911 F.Supp. 510, 517 (M.D.Ala.1995) (Thompson, J.) (awarding $ 50 and $ 70 per hour to paralegals).

Besides citing cases establishing prior awards in similar cases, both parties have provided sworn affidavits from other attorneys attempting to prove the customary fee in this community. Hall has presented affidavits from Attorney Kenneth Thomas, who states that non-contingent hourly rates in Alabama range from $ 150 to $ 400 per hour, and Attorney Ann Robertson, who states that the hourly rates requested in this case are consistent with the prevailing hourly rates. On the other hand, Lowder Realty has provided affidavits from Attorney Allison Alford, who states that Hall's attorneys all request awards that exceed those rates charged by attorneys and awarded by courts in this area, and Attorney David Boyd, who states that most federal litigators in the Middle District could expect no more than $ 225 to $275 per hour.

*Skill Required to Perform the Services Properly:* As discussed above, this case involved a novel and difficult claim. The court had the opportunity to observe Hall's attorneys first-hand over the five year pendency of the case, including the five-day trial at its culmination, and found Hall's attorneys to have been very well informed as to the state of the FHA and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, and well prepared as to both the defendants' factual and legal arguments. All of Hall's attorneys were highly skilled.

*Experience, Reputation, and Ability of the Attorneys:* All of Hall's attorneys are highly competent, as shown by their work in this court, and enjoy excellent reputations. Attorney Whatley has been practicing for almost 25 years, and is one of the most experienced civil rights trial lawyers in the state. He specializes in employment-discrimination law nationally, and, like Attorney Proll, is a past president of the Labor and Employment Law Section of the Alabama State Bar. Attorney Proll has specialized in the area of civil rights for 15 years, and states that she has likely brought more fair-housing cases in Alabama than any other attorney in the state. For most of the litigation, Attorney Proll, as well as Attorney Colfax, worked for the NAACP Legal Defense and Educational Fund, where they focused on the area of fair housing.

*Time Limitations:* This case was twice delayed due to the pendency of another case, and it took almost five years from the filing of the case to the end of trial. There is no evidence of this factor.

*Preclusion of Other Employment:* This factor "involves the duel consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. Because this case continued for almost five years, Attorney Proll argues that, as a sole practitioner, she was forced to forgo numerous other cases during the pendency of this matter, and that the NAACP Legal Defense and Educational Fund also had to forgo some cases because

it took the case as its own. While the litigation was not very active for much of five year pendency of this case, the court does find some evidence of this factor.

*Undesirability of the Case:* "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant." *Johnson,* 488 F.2d at 719. There is evidence of this factor as well. The court recognizes that there are adverse economic consequences to taking civil rights cases with contingent fees, because of the high risk of non-payment in such cases. That risk was even higher in this case, which brought novel claims under a little-used statute. Hall also points out that the defendants, the Lowder companies, are some of the best-known businesses in the Montgomery area, and that it was therefore not as desirable a case because of the popularity of the defendant.

*Nature and Length of Relationship with Clients:* Hall had no prior relationship with her attorneys.

*Fixed or Contingent Fee:* "This factor focuses judicial scrutiny solely on the existence of any contract for fees that may have been executed between the party and his attorney." *Medders v. Autauga County Bd. of Educ.,* 858 F.Supp. 1118, 1127 (M.D.Ala.1994) (Thompson, J.) (citing *Del. Valley,* 483 U.S. at 723, 107 S.Ct. at 3085). "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorneys' fee expectations when he accepted the case." *Johnson,* 488 F.2d at 718. Hall and her counsel had no fixed or contingent fee arrangement.

*Awards in Similar Cases:* "The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson,* 488 F.2d at 719. Hall argues that there are few fair-housing cases filed in federal court in Alabama comparable to the one at hand, and therefore that the

court should look at employment discrimination suits as similar litigation. Lowder Realty cites similar cases, which have awarded between $ 125 and $ 290 per hour in employment discrimination suits. *See, e.g., Doucet v. Chilton County Bd. of Educ.,* 65 F.Supp.2d 1249, 1263 (M.D.Ala. 1999) (Thompson, J.) (noting that the court has awarded non-contingent fees in the range of $ 125 to $ 290 per hour); *Ramsey,* 2000 WL 426187, at *6 (same).

The court is of the opinion, based on these criteria, that the prevailing rates for non-contingent work performed by attorneys of similar experience in similar cases are as follows for the plaintiffs' attorneys:

| ATTORNEYS | RATES |
|---|---|
| **WHATLEY DRAKE, L.L.C.** | |
| Whatley | $ 275 |
| Frankowski | 175 |
| Clerk support | 75 |
| Paralegal support | 65 |
| | |
| **NCAAP LEGAL DEFENSE FUND** | |
| Proll | 225 |
| Colfax | 175 |
| Paralegal support (Demissie) | 75 |

These rates reflect the varying experience and abilities of the attorneys. The court recognizes that the $ 275 rate for Attorney Whatley is at the high end of the rates usually awarded by this court. Whatley, however, brings with him a reputation and experience as good as any seen in this court. The $ 225 fee for Attorney Proll reflects her specialized knowledge of fair housing litigation, as well as her status as lead counsel in this litigation. *See, e.g., Gay Lesbian Bisexual Alliance v. Sessions,* 930 F.Supp. 1492, 1496–97 (M.D.Ala. 1996) (Thompson, J.) (noting that attorneys' expertise in the area of law at issue allowed them to prosecute the case more efficiently, justifying a higher hourly rate);

*Dillard v. City of Elba,* 863 F.Supp. 1550, 1553 (M.D.Ala.1993) (Thompson, J.) (same). The fees for Attorneys Colfax and Frankowski reflect the fact that they have less experience or involvement with the case than Attorneys Whatley and Proll. Finally, Paralegal Demissie's rate reflects the rate commonly awarded paralegals by this court, and is higher than that for paralegals at Attorney Whatley's law firm because of his substantial involvement with the case.

### C. Lodestar Calculations

The unadjusted lodestar figure for each attorney consists of the product of the attorney's compensable hours times the prevailing market fee. The lodestar figure for each of the attorneys, followed by the total fee award for the plaintiffs' attorneys, is as follows:

| ATTORNEYS | HOURS | RATES | SUBTOTALS |
|---|---|---|---|
| **WHATLEY DRAKE, L.L.C.** | | | |
| Whatley | 49.80 | $ 275 | $ 13,695.00 |
| Frankowski | 0.24 | 175 | 42.00 |
| Clerk support | 2.58 | 75 | 193.50 |
| Paralegal support | .18 | 65 | 11.70 |
| **NCAAP LEGAL DEFENSE FUND** | | | |
| Proll | 446.04 | 225 | 100,359.00 |
| Colfax | 58.02 | 175 | 10,153.50 |
| Paralegal support (Demissie) | 49.26 | 75 | 3,694.50 |
| **TOTAL** | | | $ 128,149.20 |

The court has therefore reduced the plaintiffs' fee request from $ 290,526.00 to $ 128,149.20.

### D. Adjustments

■ Having already adjusted Hall's attorneys' fee award downward to take into account the fact that she succeeded on only one claim, the court must now consider whether there is any reason to adjust that award upward. "Where a plaintiff has obtained excellent results, his attorney should recover fully a compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success and enhanced award may be justified." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. Although Hall was significantly successful on a difficult claim, the court does not believe that an adjustment upward is warranted.

### E. Reasonable Expenses

■ Hall seeks $ 32,007.78 for expenses incurred in connection with the litigation. With the exception of routine overhead office expenses normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case, may be taxed as costs; the standard of reasonableness is to be given a liberal interpretation. *Loranger v. Stierheim,* 3 F.3d 356, 363 (11th Cir.1993); *NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987). Hall's request may be broken down as follows:

| | | |
|---|---|---|
| Travel | $ | 5,693.16 |
| Photocopying | | 6,255.42 |
| Hotel | | 2,772.00 |
| Telephone | | 436.46 |
| Depositions | | 14,281.45 |
| Other (fees of clerk, subpoena fees, shipping) | | 2,569.29 |
| TOTAL | | $ 32,007.78 |

Lowder Realty raises a number of objections to Hall's expense request.

■ *Fees of clerk:* Lowder Realty objects to $ 60 representing fees for the pro hac vice admission of three out-of-state attorneys and two certificates of good standing for those attorneys, citing *Eagle*

*Insurance Co. v. Johnson,* 982 F.Supp. 1456, 1460 (M.D.Ala.1997) (Thompson, J.), for the proposition that these fees are not taxable as costs. *Eagle Insurance,* however, dealt with costs allowed under Rule 54(c) of the Federal Rules of Civil Procedure, not costs under § 1988, which allows a much broader range of expenses to be recovered. *See, e.g., Chalmers v. Los Angeles,* 796 F.2d 1205, 1216 n. 7 (9th Cir. 1986) ("Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees under section 1988."). The court will allow these expenses.

*Fees for service of subpoena:* Lowder Realty objects to $ 90 for two subpoenas issued to Jerry Baker on July 29 and October 23, 1999, claiming that she was not a witness at trial, was not a witness with respect to Hall's discriminatory-referral claim, and that two subpoenas were not needed to secure Baker's attendance at trial. Lowder Realty also objects to $ 350 in other subpoena fees, arguing that they were not incurred in the 2002 trial, and that Hall did not call any of the identified witnesses to whom fees were paid at the 2002 trial.

While Hall need not call every witness at trial who she subpoenaed, *cf. Morgan v. District of Columbia,* 824 F.2d 1049, (D.C.Cir.1987) (allowing fees where counsel spent time preparing expert witness ultimately not called at trial), the court sees no reason why a witness must be subpoenaed twice within a three-month span, and will therefore reduce Hall's fee request by $ 45.

*Deposition costs:* Lowder Realty objects to $ 9,453.20[4] of the $ 14,281.45 in deposition costs, claiming that those depositions covered issues in another case, *Central Alabama Fair Housing v. Lowder Realty Co.,* Civ. Action No. 97–A–474–N (M.D.Ala.), that the parties agreed to depose at the same time as this case, and that it "expects" that the depositions taken in that case were paid for. Lowder Realty also objects to the $ 1,319.50 in depositions costs for the deposition of Jerry Baker, because the court ruled on summary judgment that Baker was not a reasonable comparison for Hall; because Baker's testimony had nothing to do with the discriminatory-referral claim on which Hall prevailed; and because Baker was not called as a witness at trial.

Hall responds by admitting that there was overlap in these depositions with the *Central Alabama* case, but claims that she is not seeking to double recovery for the expenses from these depositions. She also states that all the depositions, including that of Baker, were necessary in view of the situation as it existed at the time. *See George R. Hall, Inc. v. Superior Trucking Co.,* 532 F.Supp. 985, 994 (N.D.Ga.1982) (allowing, under F.R.C.P. the costs of depositions to be "taxed in favor of the prevailing party if it appeared to be reasonably necessary to the parties in light of the particular situation existing at the time it was taken.").

The court agrees with Lowder Realty insofar as it finds that Lowder Realty should not bear the entire cost of a deposition that covered issues both in the *Central Alabama* case and in this case.

---

4. In its objection to Hall's bill of costs, filed April 30, 2002 (Doc. No. 225), Lowder Realty objects to the depositions listed in the plaintiff's bill of costs beginning with the deposition of James Lowder, 6/22/98, through the depositions of James Lowder and Barbara Bond, 3/23/98. Lowder Realty mistakenly calculates the cost of these depositions to be $ 10,269.20; the true cost is $ 9,453.20, which Lowder Realty corrects in its response to Hall's petition for attorneys' fees and costs, filed June 14, 2002 (Doc. no. 232).

Because neither party has given the court any indication as to how much of each deposition was dedicated to each case, the court will disallow half of the cost of each deposition that covered both *Central Alabama* and this case, thus reducing Hall's fee request by $ 9,453.20 × 50% = $ 4,726.60. The court will make no reduction for the cost of Baker's deposition; based on her summary-judgment submissions, it is clear that Hall took Baker's deposition in good faith for use in the case rather than for investigative purposes or to aid in the preparation of the case. *See George R. Hall* 532 F.Supp. at 994. Thus, Hall's fees for depositions will be reduced from $ 14,281.45 to $ 9,554.85.

█ *Photocopy costs:* Lowder Realty objects to Hall's photocopy costs, arguing that many of the 32,942 copies for which she seeks to recover costs must have been made for the *Central Alabama* case, especially because Lowder Realty itself only made 15,000 copies for this case. Lowder Realty also points out that Hall made no delineation as to how the documents were used in the case. *Helms v. Wal–Mart Stores, Inc.,* 808 F.Supp. 1568, 1570 (N.D.Ga.1992) ("A prevailing party cannot simply make unsubstantiated claims that the documents were necessary because only the prevailing party knows for what purpose the documents were copied."). Without proving what the copies were used for, Hall asserts simply that the copies were incurred for this case.

As with the deposition costs, the court has no way of accurately identifying how many of Hall's claimed copies were made for this case, but does find the 32,942 copies to be an excessive number, especially when Lowder Realty made less than half as many. Thus, the court will reduce Hall's claimed cost for copies by half, to $ 6,255.42 × 50% = $ 3,127.71.

*Travel and shipping costs:* Lowder Realty also objects to an unidentified amount that Attorney Proll and Paralegal Demissie spent on air travel and car rental while traveling between Washington, D.C., and Montgomery, Alabama, and $ 1,048.92 that Hall's attorneys spent in shipping costs, claiming that they, too, relate to Attorney Proll's move to D.C. The court refuses to reduce these expenses for the same reason that it refused to reduce Attorney Proll's hours spent traveling: Hall reasonably engaged the services of Attorney Proll, and should not be punished for Attorney Proll's work-related move to D.C.

The court has therefore reduced Hall's expense award from $ 32,007.78 to the following:

| | |
|---|---|
| Travel | $ 5,693.16 |
| Photocopying | 3,127.71 |
| Hotel | 2,772.00 |
| Telephone | 436.46 |
| Depositions | 9,554.85 |
| Other | 2,524.29 |
| TOTAL | $ 24,108.47 |

The court will now reduce this expense award by 40% for the same reason it reduced Hall's attorneys' hours by 40%, because she was successful on only one claim. Thus, the court will award Hall $ 24,108.47 × 60% = $ 14,465.08 in expenses.

### III.

The court finds that Hall may recover a total sum of $ 143,859.28 in fees and expenses, as follows:

| | |
|---|---|
| Fees | $ 128,149.20 |
| Expenses | 14,465.08 |
| TOTAL | $ 142,614.28 |

As the court has previously explained at length, Hall, vindicated not only her right (with the recovery of $ 100,000 in compensatory and punitive damages) and even the right of her customers to be free from the historically pernicious practice of racial segregation in housing, but the right of all residents of Montgomery, Alabama to have this evil practice purged from their midst;

with her litigation, she showed that, into the late twentieth century, racial segregation in housing imposed on others against their will still existed in this city and, that, without efforts such as hers, it would continue to exist into the twenty-first. The fee and expenses the court awards her today are modest in light of this important victory for all in this community.

For the above reasons, it is the ORDER, JUDGMENT and DECREE of the court as follows:

(1) The motions for attorneys' fees and expenses, filed by plaintiff P.R. Hall on April 22, 2002 (Doc. nos. 221 & 222), are granted in part and denied in part.

(2) Plaintiff Hall shall have and recover from the defendant Lowder Realty Company, Inc. her attorneys' fees, expenses and costs in the amount of $ 128,149.20.